POWRIE *v.* STATE TAX COMMISSION

Joseph McKeown, Coos Bay, argued the cause for plaintiff. On the brief were McKeown, Hewhouse & Johansen, and Joseph McKeown, Coos Bay.

Walter J. Apley, Assistant Attorney General, Salem, argued the cause and submitted a brief for defendant.

Decision for plaintiff rendered June 8, 1962.

PETER M. GUNNAR, Judge.

This is an appeal from opinion and order No. I-61-40 of the State Tax Commission sustaining against plaintiffs a deficiency assessment for the income tax year 1955. It comes before the court upon a general demurrer by the defendant, and the decision upon the demurrer is determinative of the entire appeal.

A. L. Powrie died on March 16, 1955, while being a resident of Oregon and subject to Oregon income tax. For the years prior to 1955, he had reported his income on the calendar year basis. On or about April 14, 1956, a decedent's final Oregon income tax return for the period from January 1 through March 16, 1955, was filed on behalf of A. L. Powrie, and on this return the tax was computed without the 45 per cent surtax enacted in 1955. On January 19, 1959, the State Tax Commission assessed the 45 percent surtax as a deficiency assessment against the plaintiffs as transferees of A. L. Powrie, and it is from this

deficiency assessment that an appeal was taken to the State Tax Commission, resulting in opinion and order No. I-61-40.

The 45 per cent surtax became law on August 3, 1955. Section 4 of that act (Oregon Laws 1955, ch 596) provided:

"Section 4. The amendments contained in this Act shall apply to all tax years ending after the date on which this Act takes effect, and ORS 316.060, 316.455 and 316.505 as they read prior to amendment by this Act shall continue to apply to all tax years ending prior to that date."

In substance, the foregoing facts were alleged in the complaint, and no question is raised by the defendant as to the technical sufficiency of the allegations to raise the issue presented by the general demurrer.

The sole issue is: What is the final "tax year" of a decedent under the Oregon income tax law?

If, as the plaintiffs contend, the decedent's final tax year ended on the date of his death, then, under Section 4 quoted above, the 45 per cent surtax would not apply to A. L. Powrie. On the other hand, if the decedent's final tax year was the full calendar year in which he died, as the defendant contends, then the 45 per cent surtax would apply.

The statutes applicable to this case are the Personal Income Tax Act of 1953, as originally enacted. This act was somewhat amended in 1955, but none of the sections affecting the definition of a decedent's tax year then were amended. All ORS references in this decision, unless otherwise noted, are to that act as originally enacted in Oregon Laws 1953, ch 304.

The definition of the term "tax year" in the 1953

act was copied verbatim from the original 1929 act. ORS 316.010(18) provided:

"(18) 'Tax year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this chapter."

ORS 316.010(8) provided:

"(8) 'Fiscal year' means an accounting period of 12 months, ending on the last day of any month other than December."

There was no express definition of the final tax year of a decedent.

The language of these two subsections is substantially identical to section 200 of the Federal Internal Revenue Code of 1918, which, in its material parts, reads:

"(1) The term 'taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under section 212 or section 232. The term 'fiscal year' means an accounting period of twelve months ending on the last day of any month other than December. * * *"

As in the case of the Oregon personal income tax act, the Internal Revenue Code of 1918 did not contain any express definition of the taxable year of a decedent. However, in *Bankers Trust Co. v. Bowers,* 295 F 89, 4 AFTR 3748, (2d Cir 1923) the taxable year of a decedent under the above quoted section was determined to be the full calendar year or fiscal year in which the date of death occurred. The reasoning of the Second Circuit was set out in Judge Manton's opinion.

"* * * The fundamental scheme of title 2

of the Revenue Act is for a tax upon the net income of the taxpayer during an accounting period of 12 successive months. This general accounting period seems to be a predetermined measure to be applied to a taxpayer as income, and is not affected by his death or change of status within the period. The tax is imposed upon the entire net income for such period, and the return of such income constitutes his return for the period of 12 full months, even though he may have lived only a portion thereof. The exception to this is where a voluntary change is made in the accounting period by the taxpayer, or where it becomes involuntary in so far as the taxpayer is concerned by the commissioner's declaring the taxable period terminated * * *." (295 F at 92; 4 AFTR at 3751)

This decision is followed and recognized in a number of subsequent cases, (see 1 P-H Citator 221; 2 P-H Citator 4075) including *Louis Hymel Planting & Manufacturing Co. v. Commissioner,* 5 BTA 910 (1926); *Bliss v. Commissioner,* 76 F2d 101, 15 AFTR 393 (CCA 3 1935); and *Penn v. Robertson,* 115 F2d 167, 25 AFTR 940 (CCA 4, 1940). These cases, together with *Palomas Land & Cattle Co. v. Commissioner,* 91 F2d 100, 19 AFTR 1069 (CCA 9 1937); *Helvering v. Morgan, Inc.,* 293 US 121, 55 S Ct 60, 79 L ed 232, 14 AFTR 681 (1934); and *Commissioner v. General Machinery Corporation,* 95 F2d 759, 20 AFTR 1312 (CCA 6 1938), none of which dealt with the tax year of a decedent, are relied upon by the defendant.

■ It is the argument of the commission that, under the doctrine of *State v. Burke,* 126 Or 651, 677, 269 P 869, 270 P 756 (1928), and *Pacific Supply Cooperative v. State Tax Commission,* 224 Or 556, 560, 356 P2d 939 (1960), the decisions of the federal courts prior to the adoption by Oregon of the language of a federal

act are controlling as having been in the contemplation of the legislature at the time of the adoption of the section from the federal law. Undoubtedly, this is the law in Oregon. Had this case been brought in 1929 or 1930, there would be no question as to the applicability of the rule of *Bankers Trust Co. v. Bowers, supra.* The real question presented by this appeal is whether or not the definition of tax year has been amended, not by the express addition of language, but by implied amendment growing out of the many changes in statutes and in concepts in both the federal and the state tax laws.

■ Since the adoption of the definition in the 1929 Oregon act, there have been wholesale changes in both the state and federal acts. The entire federal revenue code was revised in 1939 and again in 1954. The Oregon income tax act was completely revised in 1953. A brief review of the legislative and judicial history of the tax year concept and the taxation of a person in the year of his death is necessary for an understanding of this case.

Section 200 of the Federal Internal Revenue Code of 1918 defined the taxable year substantially as it is defined under ORS 316.010. In addition, the 1918 Code, in its section 226, provided for a voluntary change of the accounting period and required that the taxpayer annualize his income for a period of less than 12 months. This was the statutory situation when the *Bankers Trust Co.* case, *supra,* came before the Second Circuit. In that case the commissioner was contending that the tax year of the deceased taxpayer, Mr. Glacker, had ended at the date of death and that, this being a short period, the estate in filing the decedent's final return was required to annualize his income, de-

ductions, and credits. The Second Circuit determined that the intent of the Congress was not to require annualization in the case of a decedent's final return. To avoid annualization, the court found that the tax year of the decedent was the full 12 month period in which he died and not the "short period" ending with his death. The result was that the term "taxable year" with respect to a decedent was held to be the entire 12 month accounting period during which he died.

The court had divined accurately the intention of Congress not to require annualization in a decedent's final return. The *Bankers Trust Co.* decision was handed down at the end of 1923, and in 1924 Congress promptly enlarged the definition of taxable year to include "in the case of a return made for a fractional part of a year * * * the period for which such return is made." (Section 200 of the Revenue Act of 1924, 43 Stat 254.) This language has survived the various rewritings of the Internal Revenue Code and is now found in section 441 of the Internal Revenue Code of 1954, as amended. The same Second Circuit, considering the amendment of 1924, interprets the law to have been changed so that fractional parts of years constitute tax years in those cases where a return is made for the fractional part. *Pepsi-Cola Co. v. Commissioner,* 155 F2d 921, 34 AFTR 1437 (2d Cir 1946).

Apparently, the commissioner did not interpret the language added in 1924 as changing the result of the *Bankers Trust Co.* case, *supra.* He acquiesced in the decision, and incorporated it substantially in his regulations until 1942.

"The return of a decedent or of his estate for the year in which he died is a return for 12 months

and not for a fractional part of a year." Reg 103, Sec 19.47-1; Reg 101, 94, 86, Art 47-1.

The only case dealing with a decedent's tax year subsequent to the *Bankers Trust Co.* case and the 1924 amendment appears to be *Penn v. Robertson,* 115 F2d 167, 25 AFTR 940 (4th Cir 1940). This case turns not so much upon the statutes as upon the above quoted regulation which the court quotes verbatim (at p 176).

The Oregon income tax act was enacted in 1929 (Oregon Laws 1929, ch 448), and at that time, the Oregon Legislature did not adopt the 1924 amendment to section 200 of the Internal Revenue Act of 1918, but rather adopted as its definition of taxable year the original 1918 definition.

In 1933, Oregon departed from the basic rationale of the *Bankers Trust Co.* case, *supra,* and from the federal regulations when it required that the personal exemptions of a decedent be prorated in the year of his death. Oregon Laws 1933, ch 322, sec 2. The 1929 act had followed the federal act and had permitted a full year exemptions because the tax year of a decedent under the *Bankers Trust Co.* case and the regulations was, in fact, a full year. The concept of prorating exemptions conflicts with a theoretical 12 month tax year.

The next change occurred first in the federal act, closely followed by Oregon. Under existing provisions the income of a cash basis decedent accrued but not received at his death was escaping federal income taxation because it was not income of the decedent and yet in the hands of the estate it was a capital asset, the return of which was not income. To close this loophole, the Congress in the Revenue Acts of 1934, 1936, and 1938, required the accrual of a decedent's income

and deductions to the date of his death in his final return.

This federal change was short lived. The accrual requirement was repealed in 1942 and the present federal system was adopted.

In 1939, Oregon followed the federal act in adopting the accrual requirements, but unlike the federal act, the Oregon act still retains the accrual provisions.

In 1942, the same year that it repealed the accrual requirement, the Congress amended the section providing for short period returns to permit them specifically "when the taxpayer is in existence during only part of what would otherwise be his taxable year." Thereupon, the commissioner changed his regulations and since 1942, not only by statute but by regulation, the taxable year of a decedent for federal tax purposes has been the period from the end of his preceding normal taxable year to the date of his death.

Finally, Congress in 1948, and Oregon in 1949, enacted the joint return provisions for married couples substantially as we know them today. In the main, the Oregon provisions were copied directly from the federal act which had just been passed. Section 4 of that Oregon act (Oregon Laws 1949, ch 570) in adding subsection 2(b) to OCLA 110-1616 referred to the tax year of a decedent and this provision was taken verbatim from the federal 1948 act (what is now IRC sec 6013). It provides:

"(b) No joint return shall be made if the husband and wife have different taxable years; except that *if such taxable years begin on the same day and end on different days because of the death of either or of both,* then the joint return may be made with respect to the taxable year of each. * * *" (Emphasis supplied.)

A new federal code was adopted in 1954, and the Oregon act was rewritten in 1953. These sections and definitions remained unchanged in these complete reviews made by Congress and the Oregon Legislature.

Finally, the State Tax Commission itself in its regulations under the above quoted section, which is ORS 316.510(2), recognizes that the tax year of a decedent ends on his date of death when Reg 6.510(2) says:

"The election to file a joint return is denied a husband and wife having different tax years, except in the case where the years differ solely *because of the early termination of the tax year by the death of one spouse or both,* * * *." (Emphasis supplied.)

■ Thus, the legislative, judicial, and administrative history in this field compels the conclusion that in both federal and state law there has been a complete change of concept with respect to the tax year of a decedent. While the result of the inquiry in 1929 or 1930 for a definition of a decedent's tax year would have been clear cut, the history of the federal and state statutes results in the only clear cut fact being the existence of an ambiguity created by the retention of ORS 316.010(8) and (18) without amendment. It is this ambiguity and the rule that an ambiguity will be resolved in favor of the taxpayer that is the basis of the plaintiffs' case. *Crook v. Curry County,* 206 Or 350, 202 P2d 1080 (1956); *State Insurance Commissioner v. Allstate Insurance Co.,* 221 Or 371, 351 P2d 433 (1960).

■ Though the ambiguity exists, the construction can be determined more properly by ascertaining legislative intent than by resolving the ambiguity in favor

of the taxpayer. In every case, the paramount direction to the court in statutory construction is to ascertain the legislative intent. ORS 174.020.

■ Ordinarily, in determining that intent, the rule of *State v. Burke, supra,* would apply and the definition in the *Bankers Trust Co.* case, *supra,* would control. But this is not without exception. *Peer v. Claremont,* 188 F Supp 641 (Dist Or 1960).

■ Over the years the Oregon Legislature has sought "to simplify demands on taxpayers by bringing our income and excise tax laws in substantial conformity with corresponding provisions of the federal law * * *. This tendency to harmonize appears particularly true in the area where the laws involve methods of accounting relating to similar transactions subject to tax by both state and federal authority. * * *" *Ruth Realty Co. v. State Tax Commission,* 222 Or 290, 294, 353 P2d 524 (1960). There is nothing in the history of the sections in question which indicates any legislative intent to depart from the general concept of harmony and conformity with the federal statutes and, in fact, it clearly shows the steady influence of federal legislation and regulation upon the Oregon tax laws.

■ The enactment of the personal income tax act of 1953 brought forward in a single enactment all the changes in the law during the 24 years since 1929. At the time of the 1953 enactment, the *Bankers Trust Co.* case had long since passed into federal tax history. The federal system clearly contemplated the tax year of a decedent ending on his date of death. The 1949 Oregon amendments also envisaged a short year ending upon the decedent's death. The Oregon regulations under the 1953 act refer to the early termina-

tion of the tax year by death. Despite the presumption created by re-enactment (*Corporation of Sisters of Mercy v. Lane County*, 123 Or 144, 164, 261 P 694 (1927)), there seems little doubt that by 1953 the Oregon Legislature thought it was following the federal rule with respect to the early termination of the tax year of a decedent. When it enacted the 1953 comprehensive act, after the intervening federal and state legislative changes, the Oregon Legislature intended to follow the federal rule and it intended that the definition of tax year with respect to a decedent no longer be the original 12 month period of the *Bankers Trust Co.* case but rather be the then current federal concept of a short year. Since the intent of the legislature is controlling, its intent in this instance amended the definition to strip away the anachronism of the *Bankers Trust Co.* decision and conform the definition of this accounting term to the current federal definition that the tax year of a decedent ends on the date of his death.

■ Applying this term "tax year" with respect to a decedent to the 1955 amendments and the operative date provision in section 4 of ch 596, Oregon Laws 1955, the tax year of the decedent A. L. Powrie was terminated on March 16, 1955. The 45 per cent surtax applied only to tax years ending after August 3, 1955. Therefore, it did not apply to this decedent's final tax year.

A decree will be entered abating the additional assessment against the plaintiffs.

Dated this 8th day of June, 1962.